SOUTHERN DISTRICT OF NEW YORK
UNITED STATES DISTRICT COURT
_____x

Eileen Henderson

        Plaintiff                        **AMENDED COMPLAINT**
                                                        Electronically Filed

                                                     04 CV 4553(CLB)(MDF)

  -against-

                                                       **JURY TRIAL DEMANDED**

Regeneron Pharmaceuticals, Inc.

        Defendant

_____x

      Plaintiff Eileen Henderson, by her attorneys, **EGAN LAW FIRM,** complaining of defendant Regeneron Pharmaceuticals, Inc. respectfully alleges as follows:

### **Parties, Jurisdiction, Venue**

      1. Plaintiff Eileen Henderson ("Henderson") was employed by defendant Regeneron Pharmaceuticals, Inc. ("Regeneron") as a data input operator in the Shipping and Receiving Department from January 8th 2001 to November 10, 2003 when she was fired.

      2. Regeneron is biotechnology company located in Tarrytown, New York. It is in the business of discovering, developing and commercializing pharmaceutical products for the treatment of serious medical conditions.

3. Over the course of her employment with defendant, plaintiff was discriminated against in the terms and conditions of her employment because she is a woman. She was repeatedly sexually harassed and required to work in a pervasively hostile environment sufficiently severe to altar the terms and conditions of her employment and create an abusive work environment. Although plaintiff repeatedly complained to her supervisor and defendant's Human Resources Department about the discrimination and sexual harassment, it was allowed to continue resulting ultimately in plaintiff being physically assaulted by one of her male co-workers. When plaintiff complained to defendant's Human Resources Department about the attack, Regeneron suspended plaintiff without pay and then terminated her employment in retaliation for complaining about her treatment.

4. Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission. The EEOC issued a notice of right to sue and plaintiff commenced this action against defendant pro se on May 24, 2004.

5. The jurisdiction of this Court is based, on Title VII of the Civil Rights Act of 1964.

6. Venue in this district is proper as defendant's principal place of business is located therein.

## The Facts

7. Henderson was employed in the Shipping and Receiving Department of defendant Regeneron. It was located next to the delivery bays of the facility, separated from the rest of the employees and activities

at the facility. She was the only woman in the department of between 4 and 6 men.

8. Henderson's job was to record shipments going in and out of Regeneron on the computer. From time to time, she assisted the others in the department with loading and unloading and with deliveries within Regeneron's offices.

9. From the outset of Henderson's employment, the atmosphere in the department was like a men's lockeroom. It was the habit of the men in the department to wrestle each other, pick each other up and pin one another to the wall or the desk. Often the wrestling included grabbing each other by the testicles, commenting on their size and making other remarks referring to their sexual prowess. As the office was small and without partitions, the wrestling was physically threatening to plaintiff and the continual groping and sexual comments discomforting and upsetting.

10. Henderson repeatedly complained to her supervisor and to her male co-workers about this conduct. Henderson asked them "to take it outside" because it made it hard for her to work and work was not a "playground." But the supervisor took no action to stop the men from behaving in this manner and, in fact, through out her employ, the men continued to behave as though the Shipping and Receiving department was a men's locker room, without any regard for Henderson and its impact on her.

11. On one occasion when Henderson complained about such locker room antics, a co-worker dismissed her complaint stating that she was just mad because they were not doing it to her and then everyone laughed. The

same co-worker then rubbed his hands up and down her legs as if to show her what it would be like it she was included in the "fun". Henderson screamed at her co-worker not to touch her, provoking further laughter from the men in the department and causing Henderson to burst into tears.

12. On another occasion, a co-worker new to the department asked Henderson whom she was dating. He told Henderson, leering at her, that she needed a "man" like him and that he was going to take her out and treat her "like a lady". He commented that she looked sexy and howled like a wolf causing the other men in the department to laugh. He rubbed her back and told her she needed a massage to relieve the tension. Henderson told him not to touch her. She told him not to ask personal questions. She complained to her supervisor and asked him to tell her co-worker to keep his hands to himself but he failed and refused to do so.

13. The men in the department also made pejorative comments about Henderson's looks, making fun of her because she was missing a tooth and was overweight. They called her "gums" and "Ms. Seafood', someone who eats whenever they see food. They touched her hair which like many people of color is coarse and asked if it was real and laughed at her when she became upset with their comments. The men in the department did not make derogatory comments about each other, just about Henderson, the only woman in the department. Henderson complained to her supervisor about the conduct of her co-workers but he took no steps to prevent Henderson's co-workers from making such remarks and in fact, throughout her employ, her co-workers continued to make insulting remarks about her looks.

14. Henderson's supervisor refused to give her keys to the office although all of the men in the department had keys.  It was the practice to keep the office door locked when no one was there.  As a result, Henderson was unable to leave the office, to go to the ladies room or for any other reason, unless she was certain that one of her coworkers would be there upon her return.  Henderson's supervisor also refused to give her a pager although all of the men in the department had a pager.  Thus, if Henderson was locked out of the office or for any other reason needed assistance, she had no way of contacting anyone.

15. Henderson's supervisor refused to allow Henderson to work overtime although she repeatedly requested the opportunity to do so and all the men in the office worked overtime.

16. On February 8, 2003 one of Henderson's co-workers screamed at her, using the "f" word and other foul language.  This outburst took place in front of Henderson's supervisor who took no action to stop the co-worker from yelling at Henderson or discourage such language or conduct.  Frightened, angry and upset, Henderson reported the outburst and other discriminatory and harassing conduct to the Human Resources Department

17.   Thereafter, her supervisor provided Henderson with keys to the office but he neither apologized for nor offered her any assurance that the harassing, humiliating, demeaning and, often physically threatening, conduct and conversation would stop and in fact it did not.  It grew worse following her reporting of her co-workers' and supervisor's conduct to defendant's Human Resources Department.

18. Plaintiff's co-workers began to complain loud enough for Henderson to overhear that she was "not behaving like one of the guys", that she was too sensitive, that they needed to get rid of her.

19. One of her male co-workers complained that Henderson was being paid more than he and that was wrong because he "was the man." While these comments were being made, Henderson's supervisor nodded his head in apparent agreement.

20. In October, 2003 a co-worker attacked Henderson. He screamed at her, calling her vulgar names and cursing and charged her, pushing her back and banging her body with the full force of his weight against the copy machine and file cabinet. Plaintiff put up her hands to shield her face while two other coworkers tried to pull the attacker away from Henderson. Terrified and bruised, when Henderson got free, she called the head of her department and Human Resources to get help. Her attacker continued to yell obscenities at her and to try and break free to attack her again.

21. One of co-workers trying to restrain the attacker yelled at Henderson to leave the premises until the attacker could be calmed down. Terrified that the attacker would break free and attack her again, she refused to leave the premises until help arrived.

22. Plaintiff was taken to Human Resources where, incomprehensibly, she was suspended without pay for insubordination. She returned to work on October 17th. Her co-workers and supervisor refused to speak with her and did not give her any work to perform. On November 10, 2003, Henderson's employment with defendant Regeneron was terminated.

## AS AND FOR A FIRST CAUSE OF ACTION
(Sex Discrimination)

23. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 22 above as though fully set forth herein.

24. By denying access to keys to the Shipping & Receiving Office, a pager and other accessories provided to all male employees of the Shipping a and Receiving Department, defendant discriminated against plaintiff on account of her sex.

25. By denying plaintiff an opportunity to work overtime, she was denied a benefit of employment accorded the men in the Shipping and Receiving Department because of her sex.

26. Such conduct violates Title VII of the Civil Rights Act of 1964, 42 U.S.C §2000(e) et. seq.

27. Plaintiff was severely injured by such conduct. She was denied overtime compensation and suffered mental and emotional pain and suffering for which damage plaintiff is entitled to relief from defendant including punitive damages and attorneys fees.

## AS AND FOR A SECOND CAUSE OF ACTION
(Sexual Harassment)

28. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 27 as though fully set forth herein.

29. Defendant engaged in conduct the purpose and effect of which was to create an intimidating, hostile and offensive work environment.

30. The conduct was sufficiently severe and pervasive to altar the terms, conditions and privileges of her employment and create an abusive work environment, impacting plaintiff's ability to perform her work.

31. Plaintiff complained repeatedly to her supervisor and to defendant Human Resources Department that the conduct and speech of her co-workers was offensive and abusive to her as a woman and would be to any reasonable woman subjected to the same or similar conduct and speech. But defendant took no action to action to prevent the offensive speech and conduct or ameliorate its impact on plaintiff in anyway.

32. Such conduct violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq.

33. Plaintiff has been gravely injured by such conduct suffering severe mental and emotion distress and causing her humiliation and a loss of self-respect and to fear for her physical well being for which damage plaintiff is entitled to relief from defendant including punitive damages and attorneys fees.

**AS AND FOR A THIRD CAUSE OF ACTION**
(Retaliation)

34. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 33 as though fully set forth herein.

35. As a direct result of plaintiff's complaint to the Human Resources Department in February 2003, the harassment and discriminatory conduct and speech of plaintiff's supervisor and co-workers grew more hostile and humiliating. In conversations among her supervisor and the men in the department spoken deliberately loud enough for plaintiff to hear, they faulted

plaintiff for "not being one of the guys" and agreed that she should be terminated for going to Human Resources with her complaints about the conditions of her employment.

37. As a direct result of reporting the assault on her by one of her co-workers in October 2003 to the Human Resources Department, she was suspended without pay for 10 days.

37. As a direct result of reporting the assault on her by one of her co-workers in October 2003 to the Human Resources Department, she was terminated.

38. Such retaliatory actions violate Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e-3.

39. Plaintiff has been gravely injured by such conduct and is entitled to equitable relief and compensatory damages therefore, including pain and suffering, punitive damages and attorneys fees.

**AS AND FOR A FOURTH CAUSE OF ACTION**
(N.Y. State Executive Law)

40. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 39 as though fully set forth herein.

41. The conduct set forth hereinabove also violates section 296(a) and (e) of the New York State Executive Law.

42. Defendant is liable to plaintiff for compensatory damages for such violations, including for her pain and suffering.

## AS AND FOR A FIFTH CAUSE OF ACTION
(Intentional infliction of emotional distress)

43. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 42 as though fully set forth herein.

44. As hereinbefore stated, Plaintiff was subjected to unwanted and offensive conduct and speech by her supervisor and her co-workers. The unwanted and offensive conduct by supervisor and her co-workers resulted in severe mental and emotional distress to the plaintiff.

45. The conduct of the defendant corporation in refusing to protect plaintiff from the foreseeable violence against plaintiff's person was extreme and outrageous and intentionally or recklessly caused severe emotional distress to Plaintiff.

46. Defendant had actual notice of the conduct and speech to which plaintiff was being subjected. It knew that at the time of the assault in October 2003, plaintiff was the only woman in a department staffed by 5 male co-workers and a male supervisor. It knew that the Shipping and Receiving Department was located apart from defendant's other departments and could not be seen by other workers unless they came to the Shipping and Receiving department specifically. It also knew that because it was the practice of the Shipping and Receiving Department to pick up and deliver packages from and to other staff at defendant corporation, few staff members other than those who worked in Shipping and Receiving had reason to be in the vicinity of the department.

47. Notwithstanding, defendant failed to take any steps to stop the harassment and abuse, the physically threatening conduct or take any steps to protect plaintiff against the assault, which it was reasonably foreseeable, would occur.

48. When the assault occurred and plaintiff reported it to defendant, defendant took no action against plaintiff's supervisor, the person who assaulted plaintiff or any one in the department.  Instead, it incomprehensibly punished plaintiff first by suspending her without pay and then by terminating her.

49. The defendant's conduct was extreme and outrageous and was undertaken willfully and/or intentionally with a deliberate intent to harm plaintiff or in reckless disregard of the harm such conduct was likely to cause her.

50. The foregoing actions by defendant has caused plaintiff grave emotional and psychological damage and destroyed her sense of self confidence and of self worth, resulting for the first time in her adult life in being unable to find work.

51. Said conduct by the defendant constituted intentional infliction of emotional distress for which defendant is liable to plaintiff.

WHEREFORE, plaintiff demands judgment against the defendant in the amount of $3 million plus costs, disbursements, interest and attorneys fees and such other and further relief as this Court may deem just and proper.

Date:  New York, New York
       December 8, 2004

    Respectfully submitted,

    EGAN LAW FIRM


    _s/_____
    Susan B. Egan (SE 2554)
    258 Broadway
    Suite 8E
    New York, NY 10007
    212 619 8456